591 S.E.2d 42

**G & P TRUCKING, Respondent,**

**v.**

**PARKS AUTO SALES SERVICE & SALVAGE, INC., Appellant.**

No. 3711.

Court of Appeals of South Carolina.

Heard Nov. 4, 2003.

Decided Dec. 8, 2003.

Rehearing Denied Jan. 28, 2004.

84

Robert A. McKenzie and Gary H. Johnson, II, both of Columbia, for Appellant.

Stephen E. Darling, of Charleston, for Respondent.

GOOLSBY, J.:

In this action for contribution arising from a prior negligence claim, the trial court awarded damages to G & P Trucking against Parks Auto Sales, Service, & Salvage, Inc., in the amount of Parks Auto's pro rata share of the common liability. Parks Auto appeals. We reverse.

## FACTS

On January 12, 1999, Donald Finkey, a G & P employee, while operating a tractor-trailer at the salvage yard of Parks Auto, struck a guy wire connected to a radio communications tower and caused the tower to fall.

After the accident, G & P entered into settlements with four separate entities in connection with the collapse of the tower. Payments by G & P pursuant to the settlements were as follows: (1) to Radio Communications of Charleston (RCC), the owner of the tower, G & P paid drafts totaling $200,000.00 on January 12, 1999, and March 29, 1999; (2) to The Hartford, which insured RCC and had a right to subrogation for payments made directly to RCC, G & P paid $72,295.13 on September 1, 1999; (3) to Wicks Broadcasting, which had equipment destroyed in the accident, G & P paid $94,181.17 on February 15, 2000; and (4) to Parks Auto itself, G & P paid $36,000.00 on November 10, 2000. The total amount paid by G & P was $402,476.30.

The record on appeal indicates that, in connection with the four settlements, G & P obtained signed releases from only RCC and Parks Auto. The release from RCC states in pertinent part that, in consideration of the sum paid by G & P, RCC "remise[s], release[s] and forever discharge[s] the said Zurich Insurance [G & P's insurer], G & P Trucking Company and Donald Finkey, their agents, servants, employees, executors, adjusters, insurance companies, subsidiaries, affiliated companies, administrators, successors, employees, and assigns." The release executed by Parks Auto, after acknowledging G & P, Zurich, and Finkey as "Payers," states that Parks Auto "and its heirs, executors, administrators, and assigns, release and forever discharge said Payers, their executives, administrators, assigns, and all other persons, firms, and corporations, both known and unknown."

Before all the agreed-upon amounts were paid in full, G & P brought this claim against Parks Auto for contribution under the South Carolina Contribution Among Tortfeasors Act (the Act). In its complaint, dated January 31, 2000, G & P alleged Parks Auto was negligent in failing to warn of the guy wire and in maintaining its premises in an unreasonable condition. Parks Auto's answer, dated March 22, 2000, denied any and all

claims asserted by G & P. As of January 12, 2002, when the statute of limitations had run on any claim arising from the underlying accident, the case was still pending and no hearing had taken place.

A hearing on the matter took place February 5 and 6, 2002. The trial court, with the consent of counsel for both sides, bifurcated the trial, allowing the jury to determine whether or not Parks Auto was negligent, but reserving to itself the determination of whether Parks Auto would be liable for contribution under the Act in the event the jury found negligence.

The jury found Parks Auto negligently and proximately caused damage or injury to G & P. Parks Auto immediately moved for judgment notwithstanding the verdict or, in the alternative, a new trial on several grounds, namely, that (1) Parks Auto's liability was not extinguished by the settlements, (2) Parks Auto had no duty to warn of an open and obvious condition, and (3) Finkey's intervening negligence was the sole proximate cause of the accident. The trial court denied the motion and directed counsel to provide proposed orders on the nonjury issues, with leave to reply to the other side's order within five days thereafter.

The trial court found that "[n]one of the settlements fully compensated the parties for their loss." Nevertheless, on June 14, 2002, the trial court issued an order granting G & P judgment against Parks Auto in the amount of $201,238.15. This award was equal to half the amount that G & P had paid in connection with the accident.

## DISCUSSION

1. Parks Auto argues that, because G & P has not met the extinguishment requirement in the Act,[1] it has no legal right to contribution. We agree with this argument insofar as it concerns the payments to RCC, The Hartford, and Wicks Broadcasting.

 "The common law rule against contribution was abrogated in 1988 when our General Assembly enacted the South Carolina Uniform Contribution Among Tortfeasors

---

1. S.C.Code Ann. §§ 15–38–10 through—70 (Supp.2002).

Act...."[2] Because the Act is in derogation of the common law, it must be strictly construed.[3] Moreover, "[i]n a suit in which contribution is sought from a joint tortfeasor, the claimant obviously must prove facts sufficient under the statutes and the common law of his own state to establish a right to contribution between wrongdoers."[4]

Section 15–38–20(D) of the Act provides as follows:

A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished *by the settlement* nor in respect to any amount paid in a settlement which is in excess of what was reasonable.[5]

The trial court held that section 15–38–20 is ambiguous about whether a tortfeasor who has reached a settlement with the injured party on the underlying tort could bring a contribution action after the statute of limitations has run on the injured party's claim against the joint tortfeasor even if the settlement did not cover the injured party's damages. In reaching this conclusion, the trial court noted that the terms "extinguish" and "discharge" are not defined within the statute for purposes of the Act. The trial court then found G & P was entitled to contribution from Parks Auto based on *Castillo v. Roger Construction Co.*,[6] in which the third circuit court of appeals interpreted analogous sections of the Pennsylvania Contribution Among Tortfeasors Act and gave the term "extinguish" a liberal construction.

We, however, decline to follow *Castillo* and note that later state cases in Pennsylvania have not adhered to this decision.[7]

---

2. *Vermeer v. Wood/Chuck Chipper*, 336 S.C. 53, 68, 518 S.E.2d 301, 309 (Ct.App.1999).

3. *See Watson v. Sellers*, 299 S.C. 426, 433, 385 S.E.2d 369, 373 (Ct.App.1989) (noting that a particular act, being in derogation of the common law, must be strictly construed).

4. 18 Am.Jur.2d *Contribution* § 126, at 129 (1985).

5. S.C.Code Ann. § 15–38–20(D) (Supp.2002) (emphasis added).

6. 560 F.2d 1146 (3d Cir.1977).

7. *See, e.g., Walton v. Avco*, 530 Pa. 568, 610 A.2d 454, 461 (1992) ("If, ... a settling defendant acts only to remove himself from the uncertain-

In addition, our review of case law from other jurisdictions indicates the trial court incorrectly determined that section 15–38–20(D) is ambiguous.[8]

The plain language of section 15–38–20(D) yields only one interpretation, namely that extinguishment of the defending joint tortfeasor's liability must have resulted directly from the settlement itself.[9] We have found nothing in section 15–38–20, or, for that matter, any other part of the Act, that would suggest that the running of the statute of limitations on an action arising from the underlying tort would "extinguish" a joint tortfeasor's liability so as to entitle a settling tortfeasor to contribution.[10]

---

ties of litigation, he may not then ask the non-settling defendant to 'cover his losses' if, upon judgment, it turns out that he has made a bad business decision."); *Schuman v. Vitale*, 144 Pa.Cmwlth. 560, 602 A.2d 390, 392 (1992) (holding the Pennsylvania Legislature intended that "where there are two or more joint tort-feasors and one of them settles with the injured person, such settling joint tort-feasor may not recover contribution from the other non-settling joint tort-feasors *unless the settlement by the settling joint tort-feasor extinguishes the liability of the non-settling joint tort-feasor to the injured person* ") (emphasis added).

**8.** *See, e.g., Pearson Bros. Co. VCV Eng'g & Supply, Inc. v. Allen*, 131 Ill.App.3d 699, 86 Ill.Dec. 897, 476 N.E.2d 73 (1985). In *Pearson*, the Appellate Court of Illinois, in considering the application of an extinguishment requirement that is analogous to that in section 15–38–20(D), stated as follows:

An obvious purpose of the [legislation concerning contribution among joint tortfeasors] is to reduce the amount of litigation. A limitation on the right to obtain contribution ought to reduce the amount of litigation. The situation where a statute of limitations runs on a joint tortfeasor ... is a rare occasion. *We do not choose to torture the language of* [the extinguishment requirement] *to permit the seeking of contribution here even though it might seem fair to do so.* *Id.* at 75 (emphasis added).

**9.** *See Vermeer*, 336 S.C. at 69, 518 S.E.2d at 309 (noting that because the joint tortfeasor had been dismissed by the injured party with prejudice, the tortfeasor seeking contribution did not "extinguish" the joint tortfeasor's liability because "no liability ... existed to be extinguished").

**10.** To the contrary, the Act limits a tortfeasor's right to seek contribution in such a way that is consistent with the requirement in section 15–38–20(D) that the liability of the joint tortfeasor from whom contribution is sought must have been "extinguished by the settlement." *See* S.C.Code Ann. § 15–38–40(D) (Supp.2002) (providing in pertinent part

■ Moreover, we agree with Parks Auto's argument that the running of the statute of limitations in and of itself cannot operate to "extinguish" a tortfeasor's liability.[11] Although, as G & P argues, a statute of limitations can foreclose the right of a claimant to file suit, unlike a statute of repose, it is subject to certain counter-assertions, such as waiver, tolling, and estoppel.[12]

■ In the present case, there was no evidence of a release that would discharge any liability of Parks Auto for claims asserted by The Hartford or Wicks Broadcasting. With regard to the agreement executed in connection with G & P's payment to RCC, that document purported to release only G & P and any related entities. None of these three claimants, then, agreed that the payments received from G & P relieved Parks Auto of liability in the underlying tort.[13]

Given both the absence of a release as to Parks Auto and the unappealed finding by the trial court that none of the payments by G & P fully compensated any of the injured

---

that, if there has been no judgment against the tortfeasor seeking contribution arising from the underlying tort, the tortfeasor's right of contribution is barred unless the tortfeasor has "discharged by payment the common liability *within the statute of limitations period applicable to claimant's right of action against him* ") (emphasis added).

11. *See Langley v. Pierce,* 313 S.C. 401, 403–04, 438 S.E.2d 242, 243 (1993) (" 'A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action. A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time.' ") (citations omitted) (quoting *Goad v. Celotex Corp.,* 831 F.2d 508, 511 (4th Cir.1987).

12. *Cf. Florence County Sch. Dist. # 2 v. Interkal, Inc.,* 348 S.C. 446, 453, 559 S.E.2d 866, 869 (Ct.App.2002) (noting in passing "the proposition that the running of a statute of limitations against one tortfeasor does not affect another tortfeasor's ability to sustain a contribution action" and holding that "[t]he Statute of Repose bars actions for contribution under the Uniform Contribution Among Tortfeasors Act brought more than thirteen years after the completion of an improvement to real property").

13. Thomas S. Nolan, the adjuster who resolved the various claims, testified the payments represented a full and reasonable settlement of the potential claims; however, he also admitted on cross-examination that the respective claimants could potentially try to make additional claims.

parties for their losses, we hold that, as a matter of law, G & P has failed to establish entitlement to contribution from Parks Auto under the South Carolina Uniform Contribution Among Tortfeasors Act.

■ 2. Although the agreement executed by Parks Auto in connection with the payment it received from G & P released "all other persons, firms, and corporations, both known and unknown," we agree with Parks Auto that G & P cannot obtain contribution under the Act for this particular claim because Parks Auto, the only alleged tortfeasor other than G & P, was also the injured party and, as such, could not have been a tortfeasor as to its own injury, let alone a joint tortfeasor.[14] Because Parks Auto was not a joint tortfeasor in this particular instance, there was no "common liability."

Furthermore, we reject G & P's argument that, notwithstanding Parks Auto's status as the injured party, the award should be upheld because G & P had a contractual right under the agreement to "seek and pursue indemnity and/or contribution rights for all monies paid herein or otherwise." Without question, G & P had this right and exercised it. With respect to all four payments, including that made to Parks Auto, however, G & P requested only contribution—and not indemnity. Because there was no common liability on which to base a claim for contribution for payment of Parks Auto's own damages, G & P was not entitled to this relief for this particular claim.[15] We therefore hold that, with respect to G & P's payment of compensation to Parks Auto, the trial court was incorrect in granting G & P's request for contribution.

3. Because our holding on G & P's right to contribution is dispositive of this appeal, we do not address Parks Auto's

14. See Shipes v. Piggly Wiggly St. Andrews, 269 S.C. 479, 483, 238 S.E.2d 167, 168 (1977) (defining "duty" in a negligence case as "the obligation to conform to a particular standard of conduct toward another") (emphasis added).

15. See First Gen. Servs. of Charleston v. Miller, 314 S.C. 439, 443–44, 445 S.E.2d 446, 449 (1994) (noting the requirement in section 15–38–10 that a tortfeasor must pay more than his or her pro rata share of the "common liability" to recover contribution).

argument that it was entitled to a directed verdict on the issue of negligence.

**REVERSED.**

CONNOR and ANDERSON, JJ., concur.